UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CIPRIANO ALVARADO CALDERON, | ) | 1:05-CV-01106 LJO JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| A.P. KANE, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the Kern County Superior Court. (Pet. at 2; Answer at 1.) A jury returned a guilty verdict against Petitioner on one count of second degree murder (Cal. Penal Code § 187(a)(1)) and three counts of inflicting physical or mental pain upon a child (Cal. Penal Code § 273a(a)). (Answer at 2). The jury further found as true sentencing enhancements pertaining to the use of a firearm (Cal. Penal Code §§ 12022.53(d) and 12022.5(a)). Petitioner was sentencing to an aggregate prison term of forty-eight years-to-life.

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. (Pet. at 3). The state appellate court affirmed Petitioner's conviction in a reasoned opinion issued on January 11, 2002. Petitioner filed a petition for review to the California Supreme Court, which summarily denied the petition on March 20, 2002. (Id. at 3).

Petitioner filed on April 17, 2003, a petition for writ of habeas corpus with the Kern County

1  Superior Court, alleging the same grounds as those Petitioner currently raises in the instant petition.
2  (Lod. Doc. 2). The petition was denied by the state court on May 15, 2003. (Pet. Ex. A). Petitioner
3  subsequently filed petitions for writ of habeas corpus alleging the same grounds for relief with the
4  California Court of Appeal and the California Supreme Court, who respectively denied without
5  comment the petitions. (Answer at 3).

6  Petitioner filed the instant federal habeas petition on August 30, 2005. Petitioner raises five
7  grounds for relief in the petitioner: (1) the twenty-five year sentencing enhancement imposed by the
8  trial court violates the constitutional prohibition against double jeopardy; (2) Petitioner's right to
9  equal protection was violated when he was sentenced to a full middle term of his subordinate
10 sentence rather than one-third of the middle term; (3) a violation of the Double Jeopardy Clause as
11 the state imposed multiple punishments for the same criminal conduct; (4) ineffective assistance of
12 trial counsel; and (5) ineffective assistance of appellate counsel. Respondent concedes that
13 Petitioner has exhausted his state remedies with respect to the five grounds he raises in this instant
14 petition.

15 On January 19, 2008, Respondent filed an answer to the petition.

## FACTUAL BACKGROUND[1]

Defendant, his wife, Maria Jiminez, and the victim, Juan Medina, grew up together in the same small town in Mexico. According to Jiminez's testimony, she married defendant in 1987, and had three children, Maria, Oscar, and Ernesto, ages 11, 9, and 7, at the time of trial. Defendant moved to the United States in 1990. Jiminez joined him with the children in 1991.

In July 1998, with Medina's help, Jiminez left defendant and took the three children with her. In August 1998, Jiminez moved back in with defendant to try to work things out. She stayed with defendant less than a month before leaving him again.

After Jiminez moved out the second time, defendant learned that she was living with Medina. Defendant confronted the couple and tried to start a fight with Medina. Medina refused to fight with defendant and asked Jiminez to decide which man she was going to go with. Jiminez decided to go with Medina.

In April 1999, Jiminez, Medina and defendant were all living in Wasco; defendant lived at 28147 Poso Road, while Medina and Jiminez lived nearby with the children at 2332 Sharon Court.

---

[1] These facts are derived from the unpublished opinion by the California Court of Appeal, Fifth District, issued on January 11, 2002. (Lod. Doc. 1). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner does not challenge the state court's findings of fact with respect to the underlying events.

On April 23, 1999, at about 7:00 p.m., Jiminez, Medina, and the three children were driving in a van from Jiminez's house on Sharon Court to the laundromat. They were still on Sharon Court when defendant came driving down the street in a white car. Defendant's friend, Ramiro Boites, was sitting in the passenger seat.

Defendant stopped the car and got out, leaving the driver side door open. Medina stopped the van to avoid hitting the door. Defendant went to the back of his car and got a shotgun. Defendant came over to the van. Medina was seated in the driver's seat with the window down. Medina said to defendant, "If you're going to use it, use it." Defendant fired a shot, hitting Medina in the left side of the head. Medina got out and tried to take cover behind the van. Defendant then shot Medina in the back.

Medina died later from internal hemorrhaging. After defendant shot Medina, he threw the gun on the passenger seat of his car and drove away. Boites stayed behind to help Jiminez with the children.

Oscar sustained injuries to his face from glass that shattered when the shotgun popped. Maria sustained similar injuries to her leg. The children had been close to Medina and were upset when he died. They would sometimes cry and have difficulty sleeping at night.

After Jiminez testified at the first trial on September 16, 1999, she received a letter from defendant dated September 28, 1999. In the letter, defendant wrote he wanted Jiminez to take care of the children because they were worth more than "any other son of a bitch" she was with. Defendant also wrote: "It's a pity and also makes me angry, because of your fault, this thing happened and, because of your fault, I am going to be several years in prison. But I don't repent because one day I am going to be out, and I am going to look for you even underneath the rocks, if it's possible, because of everything that you did. It [sic] has no mercy. And on my behalf, I am never going to forgive you because of your fault. I ruined my life and my best years of my life."

On April 24, 1999, Deputy George Vargas located defendant in Tulare at his sister's house. During an interview at the Tulare City jail, defendant told Vargas that "he shot the guy that was with his wife." Defendant said he was driving toward his wife's house on Sharon Court, when he saw her in the van driven by Medina. They parked side by side. Defendant went to the trunk of his car, grabbed his 12 gauge shotgun, and shot Medina twice. Defendant said he shot Medina because " '[t]hey kept bothering him.' " Defendant told Vargas he had owned the shotgun for a long time, but that he loaded it with shells inside his house "[t]hat day." When Vargas asked him why he loaded the gun, defendant said "he had it in his mind to do it."

*Defense*

Timothy Holtermann, a farmer in the Wasco area, testified that defendant had worked for him for more than 10 years. Holtermann described defendant as easygoing and relaxed. Holtermann noticed a change in defendant's demeanor the summer his wife left him. Defendant was like a "whipped puppy" or "beaten man." When defendant's wife returned to him, he became a happy person again but it did not last very long.

Defendant's coworker, Raul Garcia, testified he had known defendant for eight years. Defendant was a hard worker and never had problems until his family troubles started. After his wife left him, defendant went from always being happy to crying every day. Defendant would call Garcia on the telephone and tell him he wanted his wife and children back.

The defense recalled Deputy Vargas. Vargas testified that during the interview, defendant stated he had not planned to kill Medina, but only to scare him. However, Vargas went on to testify that when defendant said he loaded his shotgun because "he had it in his mind to do it," he understood defendant to mean shooting Medina.

Defendant testified on his own behalf. He had been married to Jiminez for 12

years when she left him. Defendant came home one day for lunch and found the house empty of furniture, and his clothes on the floor. Jiminez called defendant two days later saying she needed money for the children. Referring to Medina, Jiminez told defendant she was now with the person she had loved all her life. This made defendant feel very badly and that his life had no purpose. He loved his children and wife very much.

At some point, Jiminez moved back in with defendant. Jiminez lived with defendant less than a month before she moved out again. After Jiminez moved out, Medina called defendant at home around four times. Medina insulted defendant. He told defendant that he and Jiminez had become lovers two months after Maria was born. Jiminez told defendant Oscar and Ernesto were not his children and he was stupid. The insults made defendant feel badly. Defendant also discovered Medina was bragging to mutual friends about receiving money from him.

The day before the shooting, defendant called Jiminez to discuss visiting the children. Jiminez told defendant to call her the next day so she could arrange to give him the children. When he called her the next day, she hung up.

According to defendant, before these telephone conversations, he had difficulty visiting the children because Jiminez would say he had no right to see them. When she hung up on him, defendant felt badly because of everything Jiminez and Medina had already done to him, which included making fun of him, talking about him to others, and laughing at him when they would run into him. Defendant described it as "too much."

Defendant did not put the shotgun in the car the day of the shooting because it had already been there for three months. When he got into his car with his friend, they were planning to go to the store to get food. On their way to the store, defendant decided to turn onto Sharon Court. Defendant wanted to see why Jiminez had hung up on him and why she was not going to let him see the children. It was not defendant's intention to shoot anyone. Defendant was upset because Medina and Jiminez made fun of him and would not let him see his children, whom he loved the most.

When he drove onto Sharon Court, defendant saw Jiminez and Medina driving in the van. Because the van had dark windows, he could not see any other passengers. When he picked up the gun, defendant intended to scare Jiminez and Medina, but he did not intend to kill Medina. He got the gun because he was tired of Jiminez and Medina bothering him and making fun of him. Medina told Jiminez if he was "going to use it, to use it." Defendant felt Medina wanted to feel superior to him and this made him feel very badly. Defendant was not thinking clearly. During the time leading up to the shooting, defendant was upset and had problems sleeping. He had never gone through anything like this before. He loved his wife and children very much, and testified that after 12 years of marriage "it wasn't easy to support all this."

*Rebuttal*

Jiminez decided to leave defendant for the first time in June or July 1998, because he had tried to kill her. According to Jiminez, defendant was always drunk and also used drugs. On the occasion which prompted her to leave, defendant was outside drinking with a group of friends. She and the children were unable to go outside the house. Later, defendant took his shotgun out from underneath the bed and placed it on Jiminez's chest. Defendant then pointed the gun up at the ceiling and fired it twice. Defendant threatened Jiminez that if she called the police, she would be dead by the time they arrived and they would not be able to capture him. Jiminez was too scared to call the police. Two or three days later she left the apartment to go live in Bakersfield.

Raymond Lopez, an investigator for the district attorney's office, inspected defendant's residence on Poso Road. Lopez found evidence of a shooting in the master bedroom. On the ceiling were two patches of masking tape covered in beige lacquered paint. Lopez removed the patches. He saw two holes about the size of quarters that were anywhere from three to six inches apart. Lopez opined the holes

1 were consistent with a shotgun firing at close range.

2 (Lod. Doc. 1 at 2).

**DISCUSSION**

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. A writ of habeas corpus may be heard in the district court that sentenced the petitioner. *See* 28 U.S.C. § 2241(d). As Petitioner's conviction arose from a judgment of the Kern County Superior Court, which is in this judicial district, the Court has jurisdiction and is the proper venue for this case. *See* 28 U.S.C. § 84(b); 28 U.S.C. § 2241(d).

**II.    AEDPA Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed on August 30, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Since the petition is governed by AEDPA, Petitioner's request for habeas corpus relief "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71

(quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that a federal habeas court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).

**III.     Review of Petitioner's Claim**

**A.     Ground One, Ground Three**

As his first and third ground for relief, Petitioner contends that the trial court violated the constitutional prohibition against double jeopardy.  The first ground challenges the constitutional validity of California Penal Code § 12022.53(d), which mandated the trial court impose a twenty-five years-to-life enhancement where a firearm is used to run consecutively with the sentence imposed for the underlying offense.  (Pet. M & A at 6-16).  As his third ground for relief, Petitioner contends that the Double Jeopardy Clause was violated by the trial court's imposition of multiple punishments for the same act–namely, Petitioner's use of a gun.  (Pet. M & A at 18-22).  As both grounds for relief alleges a violation of the Double Jeopardy Clause, the Court addresses Petitioner's arguments in the same section.

These contentions were raised in a petition for writ of habeas corpus to the Kern County Superior Court, which denied the claims in the last reasoned opinion in this case.  Petitioner's request for habeas corpus relief submitted to the state appellate court and state supreme court were summarily denied.  When reviewing a state court's summary denial of a habeas petition, the Court "look through" the summary disposition to the last reasoned decision.  *See* Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).  In its reasoned opinion, the Superior Court rejected Petitioner's claims, stating that the sentencing enhancement mandated by California Penal Code §12022.53 does not punish the same criminal act more than once.  (*See* Lod. Doc. 2, Cal. Super. Ct. Op. at 2).  The state court's reasoned that the additional term was just an enhancement of the underlying punishment, meant to deter a particular form of violence deemed threatening to the social fabric.  (Id. citing to People v. Hutchins, 90 Cal.App.4th 1308, 1314 (Cal. Ct. App. 2001)).

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  Specifically, the Double Jeopardy Clause contains three distinct constitutional protections for a criminal defendant.  Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).  "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense."  North Carolina v.

1  Pearce, 395 U.S. 711, 717 (1969); Brown v. Ohio, 432 U.S. 161, 165 (1977).

2        As noted by the Ninth Circuit and the Supreme Court, the protections against multiple
3  punishment for the same offense does not necessarily preclude cumulative punishments in a single
4  prosecution. Plascencia, 467 F.3d at 1204 (citing Missouri v. Hunter, 459 U.S. 359, 366 (1983)).
5  The dispositive inquiry in determining whether a constitutional violation has resulted from multiple
6  charges/punishments is legislative intent. Ohio v. Johnson, 467 U.S. 493, 499 (citing Hunter, 459
7  U.S. at 368-69)). Specifically, where the legislature intended to impose multiple punishments and
8  that intent is clear, the punishments are not multiple and therefore do not invoke the Double
9  Jeopardy Clause. Plascencia, 467 F.3d at 1204.

10        Additionally, in the contexts of multiple punishment and multiple prosecution, the Supreme
11  Court has concluded that where the two offenses for which the defendant is punished or tried cannot
12  survive the "same-elements" test, the double jeopardy bar applies. Id. at 696; see, e.g., Brown v.
13  Ohio, 432 U.S. 161, 168-169 (1977); Blockburger v. United States, 284 U.S. 299, 304 (1932)
14  (multiple punishment); Gavieres v. United States, 220 U.S. 338, 342 (1911) (successive
15  prosecutions). "The applicable rule is that, where the same act or transaction constitutes a violation
16  of two distinct statutory provisions, the test to be applied to determine whether there are two offenses
17  or only one, is whether each provision requires proof of a fact which the other does not."
18  Blockburger, 284 U.S. at 304; *see also* United States v. Dixon, 509 U.S. 688, 696 (1993) (stating
19  "[t]he same-elements test, sometimes referred to as the Blockburger test, inquires whether each
20  offense contains an element not contained in the other; if not, they are the "same offence" and double
21  jeopardy bars additional punishment and successive prosecution").

22        The Ninth Circuit has previously addressed the constitutional validity of California Penal
23  Code § 12022.53(d), finding that the imposition of an additional twenty-five year term for use of a
24  firearm in a first degree murder case did not violate the constitutional prohibition against multiple
25  punishments for the same offense. Plascencia, 467 F.3d at 1204 (finding that the language of the
26  statute was unambiguous in expressing the California legislature's clear intent that a criminal
27  defendant receive additional punishment for offenses committed with a firearm). As such, the Court
28  finds that Petitioner's specific challenge to the constitutional validity of California Penal Code §

12022.53(d) must fail as the state's legislative intent forecloses a challenge under the Double Jeopardy Clause.

As his third ground for relief, Petitioner challenges the charge and imposition of punishment for the firearm use as violating the Double Jeopardy Clause, contending that the sentencing enhancement is based on the same facts as the underlying offenses (murder and child endangerment). Here, the crimes of murder and child endangerment require proof of different elements than the sentencing enhancement for the firearm use. The elements of murder and child endangerment does not include the use of a firearm. *See* Cal. Penal Code §§ 187(a)(1) and 273a(a). Murder and child endangerment can be accomplished in many different ways unrelated to the use of a firearm, including the use knives, bombs, fists, vehicles, and so forth. More importantly, the method used is not an element of either murder or child endangerment. Furthermore, the sentencing enhancement requires only that the defendant cause great bodily injury, which is distinct from the requirement under murder that the defendant cause the victim to be killed (as in murder) or that the defendant cause a child to be placed in a situation where their health is endangered (as in child endangerment). Accordingly, the state court rejection of this claim was a consistent and reasonable application of governing Supreme Court authority and the claim should be denied.

**B.     Ground Two**

The petition sets forth as the second ground for relief, an equal protection challenge to the trial court's imposition of a full middle term for the subordinate sentences to run consecutively to Petitioner's principal sentence. (Pet. M & A at 16-17). Specifically, Petitioner challenges the trial court's failure to apply California Penal Code § 1170.1(a) to his sentence as the statute mandates the imposition of one-third of the middle term for his subordinate sentence.[2]

Petitioner presented this claim in petitions for writ of habeas corpus to the Kern County Superior Court, the California Court of Appeal, and the California Supreme Court. The Superior

---

[2] Petitioner's principal sentence is the fifteen years to life he received for second degree murder (*See* Lod. Doc. 2). Therefore, Petitioner's subordinate sentence is that imposed for child endangerment (Cal. Penal Code § 273a(a)) and the firearm use enhancement (Cal. Penal Code § 12022.5(a)). The middle term for a violation of California Penal Code § 273a(a) and § 12022.5(a) are four years, respectively  Petitioner was sentenced to the full four years for each of the subordinate sentences.

U.S. District Court
E. D. California                                                 9

Court rejected Petitioner's claim finding that under California case law, California Penal Code §11701(a) was not applicable to Petitioner's case as the statute mandated the imposition of only one-third of the middle term where all the terms of imprisonment are determinate sentences. As the sentence Petitioner received for the murder conviction was an indeterminate sentence, the court concluded that the trial court's imposition of a full middle term for his subordinate sentence was not a violation of his equal protection rights. As the last court to issue a reasoned opinion on this claim was the Kern County Superior Court, this Court presumes that the state appellate and supreme court rejected the claim on the same basis as the lower court. *See* Ylst v. Nunnemaker, 501 U.S. at 803-04.

Generally, issues pertaining to state sentencing errors are not a cognizable basis for federal habeas review. *See* Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993). Federal habeas relief is not available for a petitioner alleging that the state court erred in its application of state law. *See* 28 U.S.C. § 2254(a); *see also* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (reiterating that federal habeas relief does not lie for errors of state law) (citations omitted); Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law). However, where the sentence is arbitrary and capricious, the misapplication of state law may rise to the level of a due process violation that would entitle a petitioner to federal habeas relief. *See* Richmond v. Lewis, 506 U.S. 40, 50 (1992).

In the sentencing context, an argument based on the Due Process Clause, which forbids imposing penalties based on arbitrary distinctions, essentially duplicates an argument based on equal protection. Chapman v. U.S., 500 U.S. 453, 465 (1991). "The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. This provision creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly. If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end." Vacco v. Quill, 521 U.S. 793, 799 (1997) (citations and quotation marks omitted).

The California Supreme Court has held that determinate terms attached to indeterminate

terms, such as enhancements for the use of a firearm, are not subject to the provisions of California Penal Code § 1170.1(a).³  People v. Felix, 22 Cal.4th 651, 656-656 (Cal. 2000).  The California Supreme Court further stated that, "[w]e thus conclude that the court should impose a full term for enhancements attached to indeterminate terms."  Id. at 656.  The Felix court also held that a sentence of some number of years to life is an indeterminate sentence.  Id. at 659.  This Court is bound by a state court's interpretation of its own laws.  *See* Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003); *see also* Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (citing Melugin v. Harmes, 38 F.3d 1478, 1482 (9th Cir. 1994)).   The trial court's imposition of a full middle term for Petitioner's subordinate sentence was in compliance with state law as interpreted by the state's highest court.  The language of Felix suggests that the imposition of the full middle term for the firearm enhancement was mandatory.  Thus, the trial court's actions were neither a misapplication of state law nor was it arbitrary and capricious such that it rose to the level of a due process violation.

It is clear from the state court decision that Petitioner is not similarly situated to those whose sentences are subject to California Penal Code § 1170.1(a).  As noted by the California Supreme Court, the state's unequal treatment of prisoners with only a determinate sentence and those with either an indeterminate sentence or both is "consistent with legislative policy to punish more serious crimes more severely...indeterminate sentences are generally reserved for more serious crimes than those subject to determinate sentences."  Felix, 22 Cal.4th at 656-657 (citing People v. Yates, 34 Cal.3d 644, 649-650 (Cal. 1983)).  As Petitioner is not similarly situated to determinate term prisoners and there exists a rational basis for the legislative policy for the differential treatment, the Court rejects Petitioner's Equal Protection claim as without merit and concludes that the state court did not unreasonably apply clearly established Federal law.

### C. Ground Four

---

³Petitioner cites to Wasko v. Vasquez, 820 F.2d 1090 (9th Cir. 1987), in the brief submitted before this Court.  The Court notes that Wasko was decided prior to the California courts' decisions holding that Penal Code § 1170.1(a) was inapplicable to the determinate portion of a prisoners' sentence when the prisoner is also serving a consecutive indeterminate sentence.  *See* People v. Reyes, 212 Cal.App.3d 852, 856 (1989); *see also* Felix, 22 Cal.4th at 656-656.  When construed with the deference given to state court determinations of state law, this Court finds Wasko unable to support the Petitioner's contention that Penal Code § 1170.1(a) should have been applied to his subordinate sentence.

Petitioner contends in this ground for relief that his trial counsel provided ineffective assistance, in violation of his Sixth Amendment right to counsel. (Pet. M & A at 22-45). Petitioner alleges five specific errors committed by his trial counsel: (1) failure to present evidence of provocation to reduce the murder conviction to manslaughter (Pet. M & A at 25-34); (2) failure to impeach and vigorously cross examine the testimony of a prosecution witness (Pet. M & A at 35-39); (3) failure to contact a witness willing to testify in Petitioner's defense (Pet. M & A at 40-41); (4) failure to object to prosecutor's unsupported statements during closing arguments (Pet. M & A at 42); (5) conceding Petitioner's guilt during closing arguments (Pet. M & A at 43-45).

Petitioner exhausted these claims by raising them in petitions for writ of habeas corpus to the state superior, appellate, and supreme court. The Kern County Superior Court was the last court to issue a reasoned opinion on the issue as the California Court of Appeal and Supreme Court, respectively, denied without comment the petitions. As such, this Court presumes that the state appellate and supreme court rejected the claim on the same basis as the lower court. *See* Ylst v. Nunnemaker, 501 U.S. at 803-04.

Generally, ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of 28 U.S.C. § 2254(d) recognized in Williams. Weighall v. Middle, 215 F.3d 1058, 1061-1062 (9th Cir. 2000). For the purposes of habeas cases governed by 28 U.S.C. § 2254 (d), the law governing ineffective assistance of counsel claims is clearly established. Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). A petition for writ of habeas corpus, resting upon an allegation of ineffective assistance of counsel, requires that the Petitioner establish two elements–(1) counsel's performance was deficient and (2) Petitioner was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); United States v. Olson, 925 F.2d 1170, 1173 (9th Cir. 1991); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, Petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's

1  conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at
2  687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). Secondly, Petitioner must show that
3  counsel's errors were so egregious that Petitioner was deprived of the right to a fair trial, a trial
4  whose result is reliable. Strickland, 466 U.S. at 687.  To prevail on the second element, Petitioner
5  bears the burden of establishing that there exists "a reasonable probability that, but for counsel's
6  unprofessional errors, the result of the proceeding would have been different. A reasonable
7  probability is a probability sufficient to undermine confidence in the outcome." Quintero-Barraza,
8  78 F.3d at 1348 (quoting Strickland, 466 U.S. at 694). A court need not determine whether counsel's
9  performance was deficient before examining the prejudice suffered by the Petitioner as a result of the
10 alleged deficiencies. Strickland, 466 U.S. at 697. Since prejudice is a prerequisite to a successful
11 claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to
12 Petitioner's case is fatal to an ineffective assistance of counsel claim.

13              *1. Failure to Present Provocation Evidence*

14      Petitioner alleges that his trial counsel improperly failed to present evidence of provocation
15 that would have reduced the murder conviction to a manslaughter charge. Specifically, Petitioner
16 contends his trial counsel failed to elicit testimony regarding actions committed by the victim and
17 Petitioner's wife that would have aided Petitioner's provocation defense. Furthermore, Petitioner
18 faults counsel for not providing him an opportunity to explain/deny two prior altercations involving
19 Petitioner, the victim, and his estranged wife, as well as the letter Petitioner sent to his estranged
20 wife while awaiting trial on charges.

21      The state court rejected Petitioner's ineffective assistance of counsel claim, finding that under
22 the Strickland standard, there existed no prejudice without deciding the question of whether trial
23 counsel was defective. (*See* Lod. Doc. 2, Cal. Super. Ct. Op. at 4-5). The evidence Petitioner faults
24 counsel for not presenting would not have been relevant to a determination of whether sufficient
25 provocation existed as the incidents were too remote in time and did not concern the victim. *See*
26 People v. Daniels, 52 Cal.3d 815, 868 (Cal. 1991) (quoting 1 Witkin & Epstein, Cal. Criminal Law
27 Crimes Against the Person, § 517, 584-585 (2d ed. 1988) for the rule that, "'if sufficient time has
28 elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not

manslaughter'"); People v. Lee, 20 Cal.4th 47, 59 (Cal. 1999)(citing to In re Thomas C., 183 Cal.App.3d 786, 798 (Cal. Ct. App. 1986) and People v. Brooks ,185 Cal.App.3d 687, 694 (Cal. Ct. App. 1986) for the proposition that, "the provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation omitted] or be conduct reasonably believed by the defendant to have been engaged in by the victim"). Here, the incidents Petitioner wanted an opportunity to explain were a "shotgun incident" involving only Maria and Petitioner, an altercation between Petitioner and the victim that occurred eight months prior to the shooting, and a letter written after Petitioner had been arrested for the shooting. As such, Petitioner's trial counsel cannot have prejudiced Petitioner's provocation defense by failing to present this evidence as it was irrelevant to whether Petitioner had been provoked. As such, even assuming *arguendo* that trial counsel was deficient, Petitioner cannot establish prejudice.

Secondly, the Court notes that the record reveals that Petitioner's counsel presented evidence of provocation. While the state court did not address the issue of whether trial counsel's performance was deficient, the record reveals that Petitioner's counsel did indeed elicit testimony from Petitioner of provocative incidents involving Petitioner and the victim. Petitioner's counsel elicited from Petitioner several statements from Petitioner that Juan told Petitioner that the children were his (RT 213); Juan bragged to others that he received money from Petitioner (RT 213); Juan and Petitioner's estranged wife made fun of Petitioner, talked about him to other people, and laughed at Petitioner when they ran into him (RT at 215; 216; 217); Juan made harassing phone calls to Petitioner, telling him that Juan and Petitioner's wife had been lovers since their oldest child had been two months and that Petitioner was foolish to love someone who did not love Petitioner (RT at 205); and that Juan threw the gifts Petitioner had bought for the children on the ground and made disparaging remarks to Petitioner (RT at 203). Thus, Petitioner's counsel did adequately present a provocation defense in a failed attempt to mitigate the second degree murder charge to manslaughter. Consequently, Petitioner has also failed to establish the deficiency prong necessary to succeed on an ineffective assistance of counsel claim.

### 2. *Failure to Impeach and Vigorously Cross Examine Key Prosecution Witness*

Petitioner further faults trial counsel for failing to subject his estranged wife's testimony to a

1  vigorous cross examination, specifically challenging trial counsel's failure to impeach the witness
2  with regards to her testimony on several issues.  The petition argues that counsel should have
3  impeached the witness on her testimony that her fear of Petitioner was the motivating reason why she
4  did not call the cops during the shotgun incident; that Petitioner did not spend time with the children;
5  that Petitioner insulted her during phone conversations; and lastly her alleged misstatements as to
6  where she was living on specific dates.

7       The state court rejected this claim, applying the Strickland standard in concluding that
8  Petitioner failed to establish prejudice as the impeachment evidence did not raise a reasonable
9  probability that the result reached at Petitioner's trial would have been different.  *(See* Lod. Doc. 2,
10 Cal. Super. Ct. Op. at 5).  The Court finds that the state court's application was not unreasonable.
11 While a failure to investigate possible methods of impeaching a prosecution witness may constitute
12 ineffective assistance of counsel, there is no allegation that Petitioner's counsel failed to investigate
13 methods of impeachment.  *See* Reynosos v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006) (citing
14 Tucker v. Ozmint, 350 F.3d 433, 444 (4th Cir. 2003)); *see also* Williams, 529 U.S. 362 (holding that
15 an attorney's failure to investigate may be so egregious as to violate both prongs of the
16 ineffectiveness test established by Strickland).  The Court does not fault counsel's tactical decision
17 not to impeach Maria's testimony in such respects as the issue of Petitioner insulting his estranged
18 wife on the phone, where she was living months prior to the shooting, and whether he spent time
19 with the children were not material issues at the trial.  Trial counsel did point out inconsistencies in
20 Maria's testimony with her prior testimony pertaining to the actual shooting, specifically asking
21 Maria, "So when you testified in May, you weren't telling the truth?"   (RT 103).  With regards to the
22 shotgun incident, the impeachment evidence Petitioner wanted trial counsel to present was
23 Petitioner's testimony, which the jury would have weighed against contradictory testimony from
24 Maria and the prosecutor's investigator.  This evidence does not convince the Court that had
25 Petitioner's counsel introduced the impeachment evidence, there exists a reasonable probability
26 Petitioner would have received a different verdict.

27      *3.  Failure to Contact Potential Defense Witness*

28      Petitioner's assertion that trial counsel's failure to contact and call the victim's wife, Juana,

to testify constitutes ineffective assistance of counsel must also fail. While failure to contact a potential witness could constitute ineffective assistance of counsel, the Court does not find this to be such a case. *See* Luna v. Cambra, 306 F.3d 954, 961 (9th Cir. 2002); *see also* Brown v. Meyers, 137 F.3d 1154, 1156 (9th Cir. 1998). The information that Juana would have testified to, as stated in Petitioner's declaration, was irrelevant to whether Petitioner had been provoked by the victim. (*See* Pet. Ex. A). Rather, Juana asserts that Petitioner's estranged wife and the victim were violent towards *her* such that *she* felt threatened. According to Petitioner's declaration, Juana would not have testified to any facts that would have permitted the jury to find Petitioner guilty of the lesser charge of manslaughter and thus Petitioner has failed to establish prejudice.

*4. Failure to Object to Prosecutor's Statements*

Petitioner contends that his trial counsel committed prejudicial error when counsel failed to object to statements made by the prosecutor during closing arguments. Petitioner's claim was rejected by the state court, which noted that even assuming that the argument was not expressly supported by evidence, the evidence provides a basis for which the prosecutor's statements could be inferred. (*See* Lod. Doc. 2, Cal. Sup. Ct. Op. at 6).

Petitioner alleges that an objection, on out of record evidence grounds, should have been raised to the prosecutor's statement that, "He even said on the stand, "I wanted them both gone. I was tired of both of them." (RT at 276; Pet M & A at 42). Petitioner's contention is without merit as the prosecutor's arguments clearly had an evidentiary basis and thus trial counsel's objection on this ground would have been futile. An exchange between the prosecutor and Petitioner provided such an evidentiary basis, as the prosecutor asked, "[y]ou were tired of Juan bothering you; so you wanted to get rid of Juan; is that right?" and Petitioner responded, "Juan and Maria." This colloquy provides ample evidentiary support for the prosecutor's subsequent statement.

Additionally, Petitioner contention that trial counsel should have also objected on the same basis to the prosecutor's arguments regarding a letter Petitioner wrote to his estranged wife is also without factual basis. The prosecutor stated during closing arguments that:

> But I ask you to remember–and I believe it's People's Exhibit–the letter–3. I ask you to remember this letter. Maria did nothing to provoke this letter. Maria came to court before and testified once about what happened, and she gets this letter calling her

1 | names, telling her that no man will ever want her, telling her she's a snake, telling her
2 | that he is going to turn over every rock when he gets out to find her. She did nothing to provoke that. That's the kind of behavior that we have in this case.

(RT at 291). The letter, as translated and read in open court, did contain insults to his estranged wife (including referencing her being a prostitute and a ghost), made reference to her inability to find another romantic partner, told her she was a snake, and that he would go over every rock to find her. (*See* RT at 95-98). Thus the letter provides ample evidentiary support for the prosecutor's arguments. Consequently, the state court was correct in finding that there existed an evidentiary basis from which the prosecutor could make these arguments and Petitioner's contention is rejected.

*5. Conceding Petitioner's Guilt During Closing Arguments*

Petitioner also contends that trial counsel erred in admitting Petitioner's guilt during closing arguments. The right to effective assistance extends to closing arguments. *See* Bell v. Cone, 535 U.S. 685, 701-702 (2002); Herring v. New York, 422 U.S. 853, 865 (1975).

The state court rejected this claim, finding that trial counsel did not improperly concede guilt. (*See* Lod. Doc. 2, Cal. Sup. Ct. Op. at 7). Rather, the state court noted that the statement were part of a tactical decision based on the facts of the case. The record demonstrates that trial counsel's statement, conceding that Petitioner was guilty of a crime, was part of a strategy that invited the jury to reject the second degree murder charge and instead convict Petitioner of voluntary manslaughter. There is no dispute that Petitioner shot the victim, and consequently the best Petitioner could have hoped for was a conviction on manslaughter. The defense's decision to pursue this strategy was clearly what Petitioner's counsel was alluding to when he stated, "[c]learly a crime was committed here. The question is not whether a crime was committed but what type of crimes. I'm not going to stand here and tell you a crime wasn't committed because he's guilty." (RT at 294). Considering that Petitioner's best defense, as he himself admitted in the first ground for relief, was that of provocation to reduce the conviction to manslaughter, counsel's statements that Petitioner was guilty of a crime is not inaccurate nor prejudicial.

As stated by the Supreme Court recently, trial counsel "has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage...Judicial

review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas." Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003). Thus, the fact that counsel's strategy, of admitting guilt as a plea for the lesser offense, failed does not mean that counsel's performance fell below constitutional standards. Trial counsel's tactics in closing argument were reasonable, given the undisputed evidence that Petitioner killed the victim. For this reason, the Court finds that the state court's application of the ineffective assistance of counsel criteria was not unreasonable.

### D.     Ground Five

As his fifth ground for relief, Petitioner contends that his Sixth Amendment right to counsel was violated by the ineffective assistance rendered by his appellate counsel. (Pet. M & A at 46). Specifically, Petitioner alleges that appellate counsel erred in not raising the claims alleged currently in his petition for writ of habeas corpus.

Just as a claim that trial counsel erred requires a showing of deficient performance and prejudice, ineffective assistance of appellate counsel claims also require Petitioner establish that appellate counsel's performance was deficient and that prejudice resulted. See Smith v. Robbins, 528 U.S. 259, 285 (2000)(citing Smith v. Murray, 477 U.S. 527, 535-536 (1986)).   Here, Petitioner cannot prevail as he cannot establish that the state appellate court would have granted him his requested relief considering that the state appellate court summarily denied his habeas petition, which set forth the exact grounds Petitioner faults appellate counsel for not raising.  Furthermore, the standards necessary to prevail in the state appellate court are similar to those required to prevail in Petitioner's federal habeas petition.[4] As evidenced in the foregoing discussion, Petitioner is not entitled to relief on any of the grounds his petition sets forth.  Thus, the Court finds Petitioner has not established that his appellate counsel's performance, even if deficient, undermines confidence in the outcome of his appeal.

---

[4] The California standards for ineffective assistance is similar to that required for federal habeas relief. See In re Viscotti, 14 Cal.4th 325, 351-352 (Cal. 1996) (citing Strickland, 466 U.S. at 694)). As illustrated by the state superior court rejection of Petitioner's Double Jeopardy claim, the state and federal courts both apply the "same elements test" in determining whether the Double Jeopardy clause has been violated. (See Lod. Doc. 2, Cal. Super. Ct. Op. at 2). With regards to an equal protection claim, the state and federal standards for evaluating an equal protection claim is the same. See Flynt v. California Gambling Control Commission, 104 Cal.App.4th 1125, 1140 (Cal. Ct. App. 2002).

In a related passage, Petitioner argues that, "[b]ecause several substantial errors had cumulative effect of being prejudicial, denial of petitioner's habeas corpus petition was improper by the Superior Court." (Pet. M & A at 45). While no single alleged error may warrant habeas corpus relief, the cumulative effect of errors may deprive a petitioner of the due process right to a fair trial. Karis v. Calderon, 283 F.3 1117, 1132 (9th Cir. 2002); *see also* Ceja v. Stewart, 97 F.3d 1246, 1254 (9th Cir. 1996). Petitioner's claim of cumulative error must also be rejected because, as discussed above, there were no constitutional errors to accumulate. As Petitioner did not suffer prejudice as a result of any of the alleged errors, Petitioner cannot establish cumulative prejudice by combining his claims into a group.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 23, 2008           /s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE